Keating, J.
Three detectives of the Mount Vernon Police Department having obtained a search warrant went to the Mount Vernon High School. The warrant directed a search of the persons of two students and, also, of their lockers.
The detectives presented the warrant to the vice-principal, Dr. Panitz, who sent for the two students, one of whom was the defendant, Carlos Overton. The detectives searched them and found nothing. A subsequent search of Overton’s locker, however, revealed four marijuana cigarettes.
The defendant moved to invalidate that portion of the search warrant which directed a search of his locker, on the ground that the papers were defective upon which it was based. This motion was granted. The court denied the motion to suppress, however, on the grounds that the vice-principal had consented to the search and that he had a right to do so. The Appellate Term reversed and dismissed the information, holding that the consent of the vice-principal could not justify an otherwise illegal search. The People have appealed from this order of the Appellate Term.
It is axiomatic that the protection of the Fourth Amendment is not restricted to dwellings (Go-Bart Co. v. United States, 282 U. S. 344). A depository such as a locker or even a desk is safeguarded from unreasonable searches for evidence of a crime (United States v. Blok, 188 F. 2d 1019).
There are situations, however, where someone other than the defendant in possession of a depository may consent to what otherwise would have been an illegal search. Such a ease was *362 United States v. Botsch (364 F. 2d 542 [2d Cir., 1966], cert, den. 386 U. S. 937). In that case, the defendant had rented a shed from one Stein. Stein retained a key to the shed and accepted deliveries on behalf of the defendant. When the police approached Stein and informed him of their suspicion that the' defendant was receiving goods obtained through fraud, Stein consented to a search of the shed.
In upholding the search, the court noted two significant factors. First, Stein had a key to the shed and, second, more than a mere landlord-tenant relationship existed, since Stein was empowered to take deliveries on behalf of the defendant. The court also noted that Stein had a right to exculpate himself from implication in the defendant’s scheme.
Considering all these factors cumulatively, the court concluded that, in this situation, Stein could give consent to the search. Thus, the search was not unreasonable in contravention of the Fourth Amendment.
Dr. Panitz, in this case, gave his consent to the search of Overton’s locker. The dissenting opinion suggests, however, that Dr. Panitz’ consent was not freely given, because he acted under compulsion of the invalid search warrant. If this were the case, his consent might be rendered somewhat questionable. However, Dr. Panitz testified that: “Being responsible for the order, assignment, and maintenance of the physical facilities, if any report were given to me by anyone of an article or item of the nature that does not belong there, or of an illegal nature, I would inspect the locker.” (Italics supplied.)
This testimony demonstrates beyond doubt that Dr. Panitz would have consented as he did regardless of the presence of the invalid search warrant.
The power of Dr. Panitz to give his consent to this search arises out of the distinct relationship between school authorities and students. The school authorities have an obligation to maintain discipline over the students. It is recognized that, when large numbers of teenagers are gathered together in such an environment, their inexperience and lack of mature judgment can often create hazards to each other. Parents, who surrender their children to this type of environment, in order that they may continue developing both intellectually and socially, have a right to expect certain safeguards.
*363 It is in the high school years particularly that parents are justifiably concerned that their children not become accustomed to antisocial behavior, such as the use of illegal drugs. The susceptibility to suggestion of students of high school age increases the danger. Thus, it is the affirmative obligation of the school authorities to investigate any charge that a student is using or possessing narcotics and to take appropriate steps, if the charge is substantiated.
When Overton was assigned his locker, he, like all the other students at Mount Vernon High School, gave the combination to his home room teacher who, in turn, returned it to an office where it was kept on file. The students at Mount Vernon are well aware that the school authorities possess the combinations of their lockers. It appears understood that the lock and the combination are provided in order that each student may have exclusive possession of the locker vis-á-vis other students, but the student does not have such exclusivity over the locker as against the school authorities. In fact, the school issues regulations regarding what may and may not be kept in the lockers and presumably can spot check to insure compliance. The vice-principal testified that he had, on occasion, inspected the lockers of students.
Indeed, it is doubtful if a school would be properly discharging its duty of supervision over the students, if it failed to retain control over the lockers. Not only have the school authorities a right to inspect but this right becomes a duty when suspicion arises that something of an illegal nature may be secreted there. When Hr. Panitz learned of the detectives’ suspicion, he was obligated to inspect the locker. This interest, together with the nonexclusive nature of the locker, empowered him to consent to the search by the officers.
Accordingly, the order of the Appellate Term should be reversed and the matter remitted to that court for consideration of the other points raised by the defendant which were not decided on the prior appeal.