Gregory Gordon MOORE, Plaintiff,

v.

The STUDENT AFFAIRS COMMITTEE OF TROY STATE UNIVERSITY, Annette Gibbs, Chairman, R. W. Williford, Laureson Forrester, Sandra Martin, Martha Wingard, James Frank O'Neal, and Maurice McCord, all as members of the said committee and all of Troy State University, Troy, Alabama, Troy State University, Ralph W. Adams, President of Troy State University, Troy, Alabama, and Troy State College Board of Trustees, Defendants.

Civ. A. No. 2670-N.

United States District Court
M. D. Alabama,
Northern Division.

May 14, 1968.

George W. Dean, Jr., and Morris S. Dees, Jr., Montgomery, Ala., and Charles Morgan, Jr., and Reber Boult, Jr., Atlanta, Ga., for plaintiff.

MacDonald Gallion, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., of Alabama, Montgomery, Ala., for defendants.

## ORDER

JOHNSON, Chief Judge.

On February 28, 1968, plaintiff, Gregory Gordon Moore, was a student in good standing at Troy State University and resided in a dormitory on the campus which he rented from the school. A search of his room on that day, conducted by the Dean of Men and two agents of the State of Alabama Health Department, Bureau of Primary Prevention, in plaintiff's presence, revealed a substance which, upon analysis, proved to be marijuana. Following a hearing on March 27, 1968, by the Student Affairs Committee of Troy State University, plaintiff was "indefinitely suspended" from that institution on March 28.

This action was commenced on March 30, 1968, seeking reinstatement of plaintiff as a student in good standing. At a hearing in this court conducted on April 26, 1968, it was determined that plaintiff had exhausted his administrative remedies at Troy State University and that he "was denied his right to procedural due process of law in the hearing conducted at Troy State University on March 27, 1968, as a result of which he was indefinitely suspended." On motion of the defendants, jurisdiction of this cause was retained pending remand to the Student Affairs Committee of Troy State University for the purpose of conducting a hearing comporting with procedural due process of law. Pending those proceedings, plaintiff was ordered reinstated.

On May 1, 1968, a second hearing was held before the Student Affairs Committee and plaintiff was again indefinitely suspended. He again challenges, from a procedural point of view, the action taken in suspending him. He does not challenge the underlying substantive basis for the action of the Student Affairs Committee. If plaintiff while a student possessed marijuana in a dormitory on campus in violation of state law,[1] then indefinite suspension from his status as a student is clearly justified.

Plaintiff now seeks relief in this court. First, he seeks readmission as a student at Troy State University on the ground of denial of procedural due process in the proceedings which resulted in his suspension; second, he seeks a declaratory judgment that none of the evidence seized in the search of his room "may be admitted in any criminal proceedings * * *"; and third, he alleges the admission in the University's hearing of the evidence obtained through a search of his dormitory room violates his Fourth Amendment rights prohibiting illegal search and seizure. The second part of the relief sought is clearly unavailable.[2]

On the morning of February 28, 1968, the Dean of Men of Troy State University was called to the office of the Chief

---

1. On March 20, 1968, a special session of the Pike County Grand Jury indicted plaintiff and three other Troy State University students for possession of marijuana in violation of Title 22, § 256 Code of Alabama (1940) (Recomp. 1958). This criminal charge against plaintiff is still pending.

2. 28 U.S.C. § 2283; Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951). See Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963); Pugach v. Dollinger, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961); Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620 (1961); Douglas v. City of Jeanette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943).

of Police of Troy, Alabama, where a conference was held regarding "the possibility of there being marijuana on the campus." Two narcotics agents, the Chief of Police, and two students were present. A second meeting was held later that morning at which a list was procured of the names of students whose rooms the officers desired permission to search. This information came from unnamed but reliable informers.[3] About 1 p. m., the officers received additional information that some of the subjects they were interested in were packing to leave the campus for a break following the end of an examination period. Upon receipt of this information, and fearing a "leak," two narcotics agents, accompanied by the Dean of Men, searched six dormitory rooms in two separate residence halls. The search of the room which plaintiff occupied alone occurred between approximately 2:30 and 2:45 p. m., in his presence, but without his permission.

At the second hearing before the Student Affairs Committee, the following stipulation was entered concerning the search:

"That no search warrant was obtained in this case, that no consent to search was given by the defendant, that the search was not incidental to a legal arrest, that no other offense was committed by the defendant in the arresting officers' presence, that Troy State University had in force and effect at the time of the search and subsequent arrest of the defendant the following regulation,

" 'The college reserves the right to enter rooms for inspection purposes. If the administration deems it necessary the room may be searched and the occupant required to open his personal baggage and any other personal material which is sealed.'

This language appears in the Troy State College current bulletin of the year 1967–68. The quoted language also appears * * * in the Troy State Bulletin for the year 1967–68. * * * This language also appears in the current publication of the Oracle, which is a student handbook. * * * This language further appears on the reverse side of a leaflet entitled 'Residence Hall Policies' which is also made available to all students of Troy State University.

"It is further stipulated that the defendant's room was searched at the invitation or consent of Troy State University by the law enforcement officials acting under the above quoted regulations."

The search revealed a matchbox containing a small amount of vegetable matter, which a state toxicologist who examined it testified was marijuana. All this testimony was received over plaintiff's objection that the evidence was seized as a result of a search in violation of the Fourth Amendment. He also challenges the constitutionality, facially and as applied, of the regulation under which the search was conducted.

This Court has previously expressed itself on the question of campus regulations, and the duty of school administrations to maintain order and discipline on their campuses in an environment suited to education, in Dickey v. Alabama State Board of Education, 273 F.Supp. 613, 617–618 (M.D.Ala.1967):

"This Court recognizes that the establishment of an educational program requires certain rules and regulations necessary for maintaining an orderly program and operating the institution in a manner conducive to learning. However, the school and school officials have always been bound by the requirement that the rules and regulations *must be reasonable.* [Emphasis in original.] Courts may only consider whether rules and regulations that are imposed by school authorities are a reasonable exercise of the power and discretion vested in those authorities. *Regulations and rules which are necessary in maintaining order and discipline are always considered reasonable.* * * * State school officials cannot infringe on their students' right of

---

3. See McCray v. State of Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

free and unrestricted expression as guaranteed by the Constitution of the United States where the exercise of such right does not 'materially and substantially interfere with requirements of appropriate discipline in the operation of the school.' Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966)" [Emphasis added.]

██ The leading case on this point is Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961). That case held that "due process requires notice and some opportunity for hearing before students at a tax-supported college are expelled for misconduct." But at the same time the Court in *Dixon* recognized the paramount duty and responsibility of educational authorities to maintain an atmosphere on campus which is conducive to the educational function. In discussing the nature of the hearing required by due process, the Court stated that the nature of the hearing would vary depending on the facts and circumstances of each particular case and that the "interests of the college" in preserving an "educational atmosphere" are to be balanced against the student's rights to due process. See Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966); Blackwell v. Issaquena County Board of Education, 363 F.2d 749 (5th Cir. 1966); Due v. Florida A. & M. University, 233 F.Supp. 396 (N.D.Fla.1963).

██ College students who reside in dormitories have a special relationship with the college involved. Insofar as the Fourth Amendment affects that relationship, it does not depend on either a general theory of the right of privacy [4] or on traditional property concepts.[5] The college does not stand, strictly speaking, *in loco parentis* to its students, nor is their relationship purely contractual in the traditional sense.[6] The relationship grows out of the peculiar and sometimes the seemingly competing interests of college and student. A student naturally has the right to be free of unreasonable search and seizures,[7] and a tax-supported public college may not compel a "waiver" of that right as a condition precedent to admission.[8] The college, on the other hand, has an "affirmative obligation" [9] to promulgate and to enforce reasonable regulations designed to protect campus order and discipline and to promote an environment consistent with the educational process. The validity of the regulation authorizing search of dormitories thus does not depend on whether a student "waives" his right to Fourth Amendment protection or on whether he has "contracted" it away; rather, its validity is determined by whether the regulation is a reasonable exercise of the college's supervisory duty. In other words, if the regulation—or, in the absence of a regulation, the action of the college authorities—is necessary in aid of the basic responsibility of the institution regarding discipline and the maintenance of an "educational atmosphere," then it will be presumed facially reasonable despite the fact that it may infringe to some extent on the outer bounds of the Fourth Amendment rights of students.

██ In Englehart v. Serena, 318 Mo. 263, 300 S.W. 268, 271 (1927), a civil action for alleged wrongful expulsion, the Supreme Court of Missouri defined the dormitory student-college relationship in real property terms as follows:

"One of the grounds on which appellant seeks a recovery of damages is that he was deprived of the 'possession' of the room he was occupying in the

---

4. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

5. Developments in the Law—Academic Freedom, 81 Harv.L.Rev. 1045, 1143–1156 (1968).

6. See Comment, Private Government on the Campus—Judicial Review of University Expulsions, 72 Yale L.J. 1362 (1963).

7. Cf. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 27 (1967).

8. Dickey v. Alabama State Board of Education, supra, 273 F.Supp. at 618.

9. See People v. Overton, 20 N.Y.2d 360, 283 N.Y.S.2d 22, 24, 229 N.E.2d 596, 598 (1967).

dormitory before the expiration of the period for which he had paid 'rent.' He was not, however, a tenant in any sense of the word. He did not have even the full and unrestricted rights of a lodger, because Albert Hall was not an ordinary lodging house. It was an auxiliary of the college, and was maintained and conducted in furtherance of that institution's general purposes. When appellant took up residence there, he impliedly agreed to conform to all reasonable rules and regulations for its government which were then in force or which might thereafter be adopted by the proper authorities."

That definition is equally apt when measuring the relationship of this plaintiff and Troy State University by the Fourth Amendment. The student is subject only to reasonable rules and regulations, but his rights must yield to the extent that they would interfere with the institution's fundamental duty to operate the school *as an educational institution*. A reasonable right of inspection is necessary to the institution's performance of that duty even though it may infringe on the outer boundaries of a dormitory student's Fourth Amendment rights. People v. Overton, 20 N.Y.2d 360, 283 N.Y.S.2d 22, 229 N.E.2d 596 (1967).[10] The regulation of Troy State University in issue here is thus facially reasonable.

 The regulation was reasonably applied in this case. The constitutional boundary line between the right of the school authorities to search and the right of a dormitory student to privacy must be based on a reasonable belief on the part of the college authorities that a student is using a dormitory room for a purpose which is illegal or which would otherwise seriously interfere with campus discipline. Upon this submission, it is clear that such a belief existed in this case.[11]

 This standard of "reasonable cause to believe" to justify a search by college administrators—even where the sole purpose is to seek evidence of suspected violations of law—is lower than the constitutionally protected criminal law standard of "probable cause." This is true because of the special necessities of the student-college relationship and because college disciplinary proceedings are not criminal proceedings in the constitutional sense. It is clearly settled that due process in college disciplinary proceedings does not require full-blown adversary hearings subject to rules of evidence and all constitutional criminal guaranties. "Such a hearing, with the attending publicity and disturbance of college activities, might be detrimental to the college's educational atmosphere and impractical to carry out." Dixon v. Alabama State Board of Education, supra.

 Assuming that the Fourth Amendment applied to college disciplinary proceedings, the search in this case would not be in violation of it. It is settled law that the Fourth Amendment does not prohibit reasonable searches when the search is conducted by a superior charged with a responsibility of

10. That case deals with the right of a high school principal to give consent to a search of a high school student's locker for marijuana over the student's objection. While there are obviously functional differences between the disciplinary requirements of high school and college students, no distinction can be drawn between the fundamental duties of educators at both levels to maintain appropriate campus discipline. A reasonable right of inspection of school property and premises—even though it may have been set aside for the exclusive use of a particular student—is necessary to carry out that duty. With respect to the search of lockers generally, compare United States v. Donato, 269 F.Supp. 921 (E.D.Pa.1967), aff'd 379 F.2d 288 (3d Cir. 1967).

11. The school authorities in this case not only had information sufficient to form "reasonable cause to believe" plaintiff was using his room in a manner inconsistent with appropriate school discipline, but they also had enough information to amount to probable cause to believe the conduct was criminal. McCray v. State of Illinois, supra n. 3.

maintaining discipline and order or of maintaining security.[12] A student who lives in a dormitory on campus which he "rents" from the school waives objection to any reasonable searches conducted pursuant to reasonable and necessary regulations such as this one.

■ Plaintiff also alleges that he was denied procedural due process of law in the hearing in that the hearing was not open to the press, other students, and the public generally. Pursuant to a long-standing policy of the school, the hearing was attended only by the Student Affairs Committee—whose membership contains two students—the witnesses, plaintiff and his counsel, and plaintiff's parents. Over plaintiff's objection, a newspaper reporter was forbidden to attend, but a full record of the proceedings was made by a court reporter.

■■ This Court has recently expressed its opinion that such hearings should be open to the press when this is possible without interference with the orderly operation of the educational institution.[13] But this Court at the same time ruled that "an open hearing in the sense that a defendant in a criminal case is entitled to a hearing in open court is not contemplated by the law insofar as the compliance with the procedural rights of students are concerned. * * * "[14] The evidence in this case reflects that the school authorities at Troy State University considered it necessary in the exercise of their duty to conduct a relatively closed hearing in order to maintain order and discipline on campus and to avoid interference with the educational function. Any possible prejudice in this case was ameliorated by the fact that plaintiff was given the right to have his counsel attend and the opportunity to confront and fully cross-examine all witnesses against him. In addition, a full transcript of the hearing was made by a court reporter and is a part of the record in this cause.

This Court recognizes that presently in our society, education is no longer a luxury but a necessity. The privilege of attending public educational institutions must be recognized as a right for those qualified to meet the academic requirements and whose conduct does not interfere with the orderly operation of an educational institution. But this does not mean that a disciplinary proceeding held for the purpose of preserving an orderly educational environment through the discipline of those students whose conduct interferes with the educational function is such a proceeding in which all constitutional safeguards are applicable. The Constitution requires only that "rudimentary elements of fair play" be observed and this must be determined on a case by case basis. *Dixon,* supra. The hearing afforded Moore by Troy State University in this case was in all respects fair and none of Moore's constitutional rights were infringed by reason of the University's action in suspending him.

In accordance with the foregoing, it is the order, judgment and decree of this Court that plaintiff's claims for relief be and are, in each instance, hereby denied. It is ordered that this cause be and the same is hereby dismissed.

It is further ordered that the costs incurred in these proceedings be and the same are hereby taxed against the plaintiff, for which execution may issue.

12. See United States v. Grisby, 335 F.2d 652 (4th Cir. 1964); United States v. Collins, 349 F.2d 863, 868 (2d Cir. 1965); United States v. Donato, 269 F.Supp. 921 (E.D.Pa.1967), aff'd 379 F.2d 288 (3d Cir. 1967); United States v. Miller, 261 F.Supp. 442, 449 (D.Del.1966). Compare Saylor v. United States, 374 F.2d 894, 900–901 (Ct.Cl.1967).

13. See transcript of proceedings in DeVeaux, et al. v. Tuskegee Institute, April 24, 1968, at 12–13, M.D.Ala., Civil Action No. 758–E.

14. Id.