Frank **PIAZZOLA** and Terrance
Marinshaw, Petitioners,

v.

John **WATKINS**, Warden, et al.,
Respondents.

Civ. A. No. 3071–N.

United States District Court,
M. D. Alabama, N. D.

July 15, 1970.

Morris S. Dees, Jr., and Joseph J. Levin, Jr., Montgomery, Ala., for plaintiffs.

MacDonald Gallion, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., Montgomery, Ala., for defendants.

ORDER

JOHNSON, Chief Judge.

The petitioners were indicted by a grand jury of Pike County, Alabama, for the offense of illegal possession of marijuana. After pleas of not guilty were interposed, trials were had, and petitioner Piazzola was convicted on April 25, 1968 and petitioner Marinshaw on April 26, 1968. The convictions were affirmed by the Alabama Court of Criminal Appeals. The matter is presented to this Court upon a habeas corpus petition filed April 24, 1970. The basis for

the petition is that the convictions violate the Fourth Amendment to the Constitution of the United States. The State's motion to dismiss on the ground that the petitioners have failed to exhaust the remedies available to them in the courts of the State of Alabama, as required by Section 2254, Title 28, United States Code, was denied by this Court in a formal order entered June 17, 1970, this Court holding that coram nobis is not available in Alabama to correct the admission of illegally obtained evidence, citing Johnson v. Williams, 244 Ala. 391, 13 So.2d 683; Ex parte Banks, 42 Ala. App. 669, 178 So.2d 98. Furthermore, it affirmatively appears that petitioners have already raised the illegal search and seizure issue before the Alabama Supreme Court. Since they have done so, it is not necessary that they attempt to do so again through collateral proceedings. Brown v. Allen, Warden, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

The writ of habeas corpus filed on behalf of each of the petitioners is submitted to this Court at this time by agreement of counsel. The submission is upon a stipulation of facts, which includes a transcript of the testimony taken on petitioners' motion to suppress evidence prior to their trial in the State court. Upon this submission this Court, as authorized by Rule 52, Federal Rules of Civil Procedure, now makes in this memorandum opinion the appropriate findings of fact and conclusions of law.

On the morning of February 28, 1968, the Dean of Men of Troy State University was called to the office of the Chief of Police of Troy, Alabama, to discuss "the drug problem" at the University. Two State narcotic agents and two student informers from Troy State University were also present. Later on that same day, the Dean of Men was called to the city police station for another meeting; at this time he was informed by the officers that they had sufficient evidence that marijuana was in the dormitory rooms of certain Troy State students and that they desired the coopera-

tion of University officials in searching these rooms. The police officers were advised by the Dean of Men that they would receive the full cooperation of the University officials in searching for the marijuana. The informers, whose identities have not yet been disclosed, provided the police officers with names of students whose rooms were to be searched. Still later on that same day (which was during the week of final examinations at the University and was to be followed by a week-long holiday) the law enforcement officers, accompanied by some of the University officials, searched six or seven dormitory rooms located in two separate residence halls. The rooms of both Piazzola and Marinshaw were searched without search warrants and without their consent. Present during the search of the room occupied by Marinshaw were two State narcotic agents, the University security officer, and a counselor of the residence hall where Marinshaw's room was located. Piazzola's room was searched twice. Present during the first search were two State narcotic agents and a University official; no evidence was found at this time. The second search of Piazzola's room, which disclosed the incriminating evidence, was conducted solely by the State and city police officials.

At the time of the seizure the University had in effect the following regulation:

> The college reserves the right to enter rooms for inspection purposes. If the administration deems it necessary, the room may be searched and the occupant required to open his personal baggage and any other personal material which is sealed.

Each of the petitioners was familiar with this regulation. After the search of the petitioners' rooms and the discovery of the marijuana, they were arrested, and the State criminal prosecutions and convictions ensued. The basic question presented is whether the evidence that formed the basis for the petitioners' convictions and present incarceration was obtained as a result of an un-

reasonable search and seizure within the meaning of the Fourth Amendment to the Constitution of the United States. As justification for the search and seizure, the respondents rely almost entirely upon this Court's opinion in Moore v. Student Affairs Committee of Troy State University, 284 F.Supp. 725 (M. D.Ala.). The *Moore* case involved judicial review of the constitutional validity of University administrative proceedings which resulted in the suspension of Gary Moore from Troy University. The suspension in the *Moore* case was based upon a search of Moore's dormitory room by University officials and the discovery of marijuana in his room. In *Moore*, this Court emphasized:

> A student naturally has the right to be free of unreasonable searches and seizures, and a tax-supported public college may not compel a "waiver" of that right as a condition precedent to admission.

Upon the facts presented in *Moore*, this Court held that the University regulation authorizing the search of dormitory rooms was a reasonable exercise of University supervisory duties, stating:

> The student is subject only to reasonable rules and regulations, but his rights must yield to the extent that they would interfere with the institution's fundamental duty to operate the school *as an educational institution*. A reasonable right of inspection is necessary to the institution's performance of that duty even though it may infringe on the outer boundaries of a dormitory student's Fourth Amendment rights. People v. Overton, 20 N.Y.2d 360, 283 N.Y.S.2d 22, 229 N.E.2d 596 (1967). The regulation of Troy State University in issue here is thus facially reasonable. [Footnotes omitted.] 284 F.Supp. at 730.

After making a finding that the regulation was "facially reasonable", this Court further held that the regulation was reasonably applied and stated:

> The regulation was reasonably applied in this case. The constitutional boundary line between the right of the

school authorities to search and the right of a dormitory student to privacy must be based on a reasonable belief on the part of the college authorities that a student is using a dormitory room for a purpose which is illegal or which would otherwise seriously interfere with campus discipline. Upon this submission, it is clear that such a belief existed in this case.

> This standard of "reasonable cause to believe" to justify a search by college administrators—even where the sole purpose is to seek evidence of suspected violations of law—is lower than the constitutionally protected criminal law standard of "probable cause." This is true because of the special necessities of the student-college relationship and because college disciplinary proceedings are not criminal proceedings in the constitutional sense.

> \*   \*   \*   \*   \*   \*

> It is settled law that the Fourth Amendment does not prohibit reasonable searches when the search is conducted by a superior charged with a responsibility of maintaining discipline and order or of maintaining security. A student who lives in a dormitory on campus which he "rents" from the school waives objection to any reasonable searches conducted pursuant to reasonable and necessary regulations such as this one. [Footnotes omitted.] 284 F.Supp. at 730–731.

▆▆▆▆ This Court does not find *Moore* applicable in the case *sub judice*. Here, the search was instigated and in the main executed by State police and narcotic bureau officials. The only part the University officials played in the search of the petitioners' dormitory rooms was at the request of and under the direction of the State law enforcement officers. Under such circumstances the State of Alabama, upon the petitioners' motion to suppress, had the burden of showing probable cause for the search of petitioners' rooms. The standard of "reasonable cause to believe" laid down by this Court in *Moore*

as a justification for a search by college officials that resulted in school disciplinary proceedings cannot be the justification for a search by a police officer for the sole purpose of gathering evidence for criminal prosecutions. The transcript of the hearing held by the State court on petitioners' motion to suppress the evidence in this case reflects that of the State's two witnesses from the police search group, Mr. Ward, the first witness, gave only the following testimony relating to probable cause:

Q   * * * Mr. Ward, prior to going to Troy State campus on that day did you or your department have information as to marijuana on the campus?

A   We did.

Q   Specifically in Alumni and–or Clements Hall?

A   That is correct.    (Tr. 28)

   *   *   *   *   *   *

Q   You never seen [sic] any student informants?

A   I did not.

Q   You didn't talk to any student informants?

A   I did not.    (Tr. 33)

   *   *   *   *   *   *

THE COURT: You said you had information there was marijuana in these rooms at this time and prior to the search?

A   Yes, sir.    (Tr. 33)

   *   *   *   *   *   *

Q   Who gave you the information to search certain rooms?

A   The information * * * came from D. R. Terry [another agent who did not testify], if I remember correctly. He had the information.

Q   * * * You didn't have any information?

A   I was instructed, right, to search certain rooms.    (Tr. 33)

Mr. McKey, a narcotic agent, was the second and last witness for the State to testify concerning the police group's actions:

Q   On that day did you personally have the information that there was marijuana in Clements Hall and Alumni Hall on the Troy State University campus?

A   Yes, sir.

Q   Did you believe that information?

A   Yes, sir.    (Tr. 35)

   *   *   *   *   *   *

Q   Where did you get that information?

MR. HALL: We object.

THE COURT: Sustained. You are asking for names?

MR. DEAN: Yes, sir.

THE COURT: Sustained.

Q   * * * Were your informants students of Troy State College?

MR. STEPHENS: We object.

THE COURT: Sustained. (Tr. 37)

No other evidence was offered by the State in justification of the search, except, as noted above, that the officers "had information," that they believed that information, and that, implied by the testimony, there were some unnamed informers whose information or credibility as informers was never discussed.

The State's evidence on the question of probable cause failed completely. Under the circumstances that existed in this case, in order to establish probable cause the State police officers must give the underlying facts or circumstances upon which they base their conclusions. Furthermore, when officers contend that they searched upon information from an informer, they must show that the informer was reliable, and the evidence must also reflect some factual basis for the informant's conclusions. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L. Ed.2d 142 (1964); McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.

■ The State argues, in support of its warrantless search, that the petitioners consented to the search indirectly by reason of the University regulation. This argument cannot stand. As stated earlier, this was not a University initiated search for University purposes, but rather a police initiated search for criminal prosecution purposes. The fact that the University officials agreed to the search gives it no validity. As this Court emphasized in *Moore,* students and their college share a special relationship, which gives to the college certain special rights including the right to enter into and inspect the rooms of its students under certain situations. However, the fact that the college has this right—for a restricted purpose—does not mean that the college may exercise the right by admitting a third party. In United States v. Blok, 88 U.S.App.D. C. 326, 188 F.2d 1019 (1950), the District of Columbia police officers searched a desk assigned to Blok for her exclusive use in the office where she was employed. They searched with the consent of her supervisors who had the authority, as her employing superiors, to reasonably search her desk for any purpose in connection with the work of the office. The United States Court of Appeals for the District of Columbia stated:

There consent did not make such a search by the police reasonable. Operation of a government agency and enforcement of criminal law do not amalgamate to give a right of search beyond the scope of either. Thus the government cannot, to find evidence of crime, search sealed mail in the possession of the Post Office Department. Ex parte Jackson, 96 U.S. 727, 733, 24 L.Ed. 877. In our opinion the search of appellee's desk by the police violated her right of privacy under

the Fourth Amendment and the seized evidence should have been suppressed. See also Corngold v. United States, 9 Cir., 367 F.2d 1.[1] This means, therefore, that, even though the special relationship that existed between these petitioners and Troy University officials conferred upon the University officials the right to enter and search petitioners' dormitory rooms, that right cannot be expanded and used for purposes other than those pertaining to the special relationship. The right conferred by reason of the special relationship must be very narrowly construed, and with such a construction the University's right to enter and search could not in this instance be delegated to the State criminal investigators. This Court in *Moore* emphasized that the Court was setting the outer limits of University authority, stating:

[A] student is subject only to reasonable rules and regulations, but his rights must yield to the extent that they would interfere with the institution's fundamental duty to operate the school *as an educational institution.*

This distinction is not one of form over substance. The distinction lies in the "special relationship" existing between the college and the student and the purposes for which the search is conducted.

Since there was no warrant, no probable cause for searching without a warrant, and no waiver or consent, the search of petitioners' dormitory rooms by State law enforcement officers, including narcotic agents and Troy city police officers, on February 28, 1968, was in violation of the petitioners' rights as guaranteed by the Fourth Amendment to the Constitution of the United States. It follows that the convictions of the petitioners, having been based solely upon the fruits of such

---

I. There are numerous cases where the courts have held that a hotel's right to enter guests' rooms for hotel purposes, such as cleaning and inspection, cannot be delegated to police and used as a "con-

sent" for a police search. United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856.

search, are likewise illegal and cannot stand. Accordingly, it is the

Order, judgment and decree of this Court that the conviction of Frank Piazzola on April 25, 1968, and the conviction of Terrance Marinshaw on April 26, 1968, both in the Circuit Court of Pike County, Alabama, which convictions form the basis for the present incarceration of each, be and each of said convictions is hereby set aside. It is further

Ordered that Frank Piazzola and Terrance Marinshaw be released immediately by the State authorities now holding them in custody pursuant to said convictions.