Edward K. Pincus, J.
This is an application, prior to the trial of the defendants as youthful offenders, to suppress the introduction of certain narcotic drugs as evidence upon the ground of an illegal search and seizure.
Upon the hearing, which was granted by the court, the prosecution called as a witness, Mr. Edward Horn, who stated that he was employed by the New York City Board of Education in the position of Dean of Boys at Brandéis High School. He testified that on September 16, 1969, some time between 10- a.m. and 11 a.m. a student-informer, from whom he had previously received information* (resulting in three arrests and three convictions) concerning the unlawful possession of narcotics, told him that the defendant Maxwell (also a student at the school)
1 ‘ had stuff on him ’ ’. The witness stated that he went to Maxwell’s class, accompanied by Mr. Roth, another Dean of Boys in the school, and requested Maxwell to come to the Social Studies .office. Upon arriving there, the witness continued, he directed Maxwell to empty his pockets. The student complied with this direction and ‘ ‘ envelopes with a rubberband around it fell out. ’ ’ Mr. Horn said he observed that there were 15 envelopes containing a ‘ ‘ white powder ’ ’ and he immediately summoned a city policeman who was stationed in the building. The patrolman arrived, was given the envelopes, and after arresting Maxwell, escorted him to the local precinct, accompanied by Mr. Roth as a complaining witness.
Mr. Horn further testified that half an hour later the same student-informer told him that defendant Stewart was up on the third floor. Accompanied by an urban worker in the school, Mr. Horn went there and brought Stewart to his office where Stewart was also directed to empty his pockets. When the student did so, 16 envelopes containing a white powder, a hypo *603 dermic needle, bottle cap, and an eye dropper were uncovered. Again, the same procedure was followed: a patrolman was summoned who arrested Stewart and escorted him to the precinct.
It is observed that Mr. Horn stated that he had never taken any formal training concerning narcotic addiction but has had some experience in catching students in the school who were in possession of drugs. His efforts have been assisted, he testified, by the receipt of information from student-informers in the school. Upon this application, counsel for the defendants object to the use of the evidence upon the ground that the Dean failed to give the required warnings pursuant to the decision in Miranda v. Arizona (384 U. S. 436) and complaint is made that the Dean was unauthorized to act without a search warrant.
It is noteworthy, under the circumstances in this case, that no admissions or other inculpatory statements were made by either defendant and consequently the doctrine of Miranda concerning the inadmissibility of confessions obtained without the giving of the constitutional warnings has no application here.
Hence, the sole question presented is whether the exclusionary rule against unreasonable searches and seizures contained in the Fourth Amendment is applicable to private persons who obtain evidence for a criminal prosecution.
It is noted that, although the Dean admits the defendants remained with him in his office, he denied that he had made any citizen’s arrest, or restrained them of their liberty as is inferred by the defense. Although that issue is not material here, it is true that the point at which an arrest is made does not depend upon the presence or absence of any formal words by the witness, but is an issue of fact to be determined by the court. (People v. Butterly, 25 1ST T 2d 159.) Therefore, upon a review of the circumstances of this case, I find as a fact that the defendants were not placed under arrest until the arrival of the policemen who took them into custody. There was no contention advanced at the hearing, and I find no suggestion from the records, that the Dean of Boys was either an agent of the police or in some fashion jointly endeavoring with them to uncover crime in his school. Although defense counsel,* in his brief on the motion, argues that the Dean “was acting for the police ” and that the ‘ ‘ Dean and the urban worker were tools of the Police Department ”. I find no basis in the record in support of such a belief. We do not have in this case any “ joint-venture ” between the Dean and the police to assist a criminal prosecution, as was the fact in Stapleton v. Superior Court (70 Cal. *604 2d. 97). Consequently, it may not be said that he was a law enforcement official. On the contrary, he, as an educator, being responsible for the safety and welfare of students at Brandéis Hig’h School, sought, not on his own whim or caprice, but on the information supplied by student-informers, to determine whether certain students were either using narcotics or were in possession of narcotics. ‘ Thus, when a reasonable suspicion should arise that something of an illegal nature may be occurring, the Dean was under an obligation to determine the validity of his information. (Cf. People v. Overton, 20 N Y 2d 360.) It is to be observed that although the Overton case was remanded for further argument by the United States Supreme Court (Overton v. New York, 393 U. S. 85) the Court of Appeals reaffirmed its position upholding the right of a school official to search for and to seize property belonging to students, the possession of which was illegal. (People v. Overton, 24 N Y 2d 522.)
Counsel has argued that the law prohibits any search and seizure by a high school dean. However, the Supreme Court has earlier stated that the Fourth Amendment’s “origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies ’ ’ (Burdeau v. McDowell, 256 U. S. 465, 475). Consequently, whenever evidence is seized by a private person, without the knowledge or participation of any governmental agency, it is admissible in a criminal prosecution. (People v. Horman, 22 N Y 2d 378.) On the other hand, where there is shown some involvement of a police agent who assisted in obtaining evidence, then such evidence is excluded. (Cf. People v. Mirenda, 23 N Y 2d 439.)
The Overton decision was followed with approval in the case of Moore v. Student Affairs Committee etc. (284 F. Supp. 725) which upheld the right of college officials to enter and search a student’s room without a warrant and without his consent. There, the court found the official’s action was necessary in aid of the basic responsibility of the institution regarding discipline and the maintenance of an educational atmosphere. Similarly, a defendant who was a student at the Acadia Civilian Conservation Center or “ Job Corps ” Center at Acadia, Maine was searched, upon his return to the institution after a leave of absence, and marijuana was found in his suitcase by a school administrator. No search warrant had been obtained and the defendant was searched without his consent. In denying the motion to suppress this evidence, the Federal District Judge stated: “The Court holds that, in the circumstances of this case, the search of defendant’s suitcase was a reasonable exer *605 cise of Anderson’s supervisory power as the Administrative Officer of the Acadia Center, and therefore did not infringe defendant’s Fourth Amendment’s rights.” (United States v. Coles, 302 F. Supp. 99, 103.) It has long been held in various jurisdictions that a school official is in “loco parentis” with his students and in such a capacity can establish reasonable rules and regulations for their conduct and may require, in his supervisory capacity, a proper submission to his authority. (Cf. Calway v. Williamson, 130 Conn. 575; Suits v. Glover, 260 Ala. 449.)
It is the court’s judgment that there is no significant distinction between the cases cited and the circumstances of the instant case. Each concerns, not a law enforcement agency but a school official acting in the capacity of a private citizen without the involvement of the police authorities. As such, I find that the School Dean herein acted in a reasonable manner which violated no rights of the defendants under the Fourth Amendment.
Accordingly, the motion to suppress is in all respects denied as to each defendant.

 This information, as the Dean testified, resulted in three arrests and three convictions.

 [Attorney Gilbert, counsel for Stewart.]