Markowitz, J.
(dissenting). I view this occurrence in a different light. As my brethren and the District Attorney concede, the Coordinator of Discipline acted “ with a high degree of suspicion short of probable cause ” when he pulled defendant’s hand from his pocket and seized the hypodermic needle from defendant’s clenched fist. This was not done in the school or on its grounds; it occurred three blocks from the school. As the Coordinator and the defendant had approached the door of the former’s office, defendant had bolted toward the building’s exit and the Coordinator had taken off .in pursuit. The patrolman regularly assigned to the school joined the chase when told by the Coordinator that defendant had “ junk ” and was escaping. With both them in pursuit, the Coordinator, as noted, caught defendant three blocks away, grabbed defendant’s wrist, pulled defendant’s hand from his pocket and seized *915 the hypodermic syringe, eyedropper, etc. As the District Attorney also states, ‘ ‘ Had these acts been performed by a police officer, the evidence obtained would have been inadmissible in a criminal proceedings ” (see Mapp v. Ohio, 367 U. S. 643).
When defendant was seized, the Coordinator was not enforcing a school regulation but, as a law enforcement agent, was chasing defendant to make an arrest — and he had no basis to make the arrest.
I cannot agree that in this context, the Coordinator was acting as a private citizen or merely as a teacher, at the place of arrest.
Furthermore, had the policeman searched defendant, fruits of the search would have been suppressed. There is no logical reason to grant the teacher greater rights outside the school than the patrolman had (see Dixson v. State of New York, 54 Misc 2d 100; People v. Williams, 53 Misc 2d 1086). He was not then acting alone, he was acting in co-ordination with the patrolman. As such, his search partook of the infirmity applicable had the arrest been by the patrolman directly (cf. People v. Horman, 22 N Y 2d 378).
The Coordinator of Discipline saw no crime committed in his presence. Concededly, he acted on suspicion alone, short of probable cause. Part of his duties as Dean of Boys, was to maintain security and order at the school, a facility belonging to the City of New York. While he was not a peace officer or police officer classified under sections 154 and 154-a of the Code of Criminal Procedure, when conducting the search and seizure, he was acting as an agent of the city government cloaked with police powers and participating in the governmental function of safeguarding a municipal facility. (See, People v. Brown, N. Y. L. J., Dec. 15, 1970, p. 19, col. 2.) As a citizen, the Coordinator could arrest for an offense only if committed in his presence (Code Crim. Pro., § 183). A peace officer can arrest for an offense committed or attempted in his presence or, if a police officer, he has reasonable grounds for believing that an offense is being committed in his presence (Code Crim. Pro., § 177). The People admit that none of these grounds existed prior to the seizure of the contraband in question.
The philosophy of loco parentis is not an invitation to a teacher to arrest a student on suspicion alone three blocks from a school (see Kent v. United States, 383 U. S. 541, 554, 556; One 1958 Plymouth Sedan v. Pennsylvania, 380 U. S. 693; Matter of Gregory W., 19 N Y 2d 55; Incorporated Vil. *916 of Laurel Hollow v. Laverne Originals, 17 N Y 2d 900; People v. Moore, 11 N Y 2d 271). Moreover, the cases relied on by the majority which appear to justify what would otherwise be illegal search and seizure on the basis of this ‘ ‘ distinct relationship ” are distinguishable. Moore v. Student Affairs Committee (284 F. Supp. 725) involved the search of a student’s room in a college dormitory; People v. Overton (20 N Y 2d 360) involved the entry into lockers on high school grounds. Neither involved an off the premises search, and, of greater importance, a body search.
The invasion of privacy of a location as to which the prober has some recognized dominion or right of access is one thing. The violation of the sanctity of the person off the school grounds is quite another. They ought not be equated.
Overton (supra) is further distinguishable in that it involved an illegal warrant which was presented to the school authorities. The Supreme Court of the United States in Bumper v. North, Carolina (391 U. S. 543) held that where entry was made by law enforcement officers on the strength of an unlawful warrant and where a relative of the defendant who was at the premises told them to “go ahead”, this invitation may not be distorted into a consent to the search. “ The situation ”, said the court, “is instinct with coercion — albeit eolorably lawful coercion. Where there is coercion there cannot be consent.” (P. 550.) When Overton (supra) reached the Supreme Court of the United States, the judgment was vacated and the case remanded for further consideration in the light of Bumper (supra). On remand, the Court of Appeals held that its original disposition ‘1 was proper when rendered and is unaltered by the spirit, if not the language ” of Bumper (24 N Y 2d 522, 524). It was found by the court that unlike Bumper, the school authorities in Overton were acting not under the “lawful coercion” found objectionable in Bumper but within the ambit of their duties triggered by their suspicion that something illegal was hoarded in the school locker used by a student.
Overton defines in general terms the limits of the relationship between student and school. But that relationship has no application to areas beyond the geographical limits of the school and particularly personal searches in off-premises areas.
Just as the second Overton (supra) in interpreting Bumper (supra) restricted the latter to the “ true meaning of what was written therein” (p. 524), it too should be similarly restricted to situations where school authorities have th,e right *917 and even the duty to invade. No such right, no such duty is present where it involves the body of the defendant — especially where the search is not on school premises.
The motion to suppress was properly granted by the court below and, accordingly, I dissent and vote to affirm.
Gold, J., concurs with Lupiano, J.; Markowitz, J., dissents in memorandum.
Order reversed, etc.