**STATE of Delaware**

v.

**Joseph A. BACCINO, Jr.**

Superior Court of Delaware, New Castle.

Aug. 2, 1971.

Martin A. Schagrin, Deputy Atty. Gen., Dept. of Justice, Wilmington, for the State.

Carl Schnee, Wilmington, for defendant.

BIFFERATO, Judge.

The Court heard defendant's motion to suppress evidence in the above captioned case on April 6, 1971. The delay in deciding this case was due to the briefing. The Court finds the relevant facts to be -as follows:

On October 20, 1970, at approximately 1:45 p. m. two students of Brandywine High School were brought to the Vice Principal's office after being found out of class illegally. The Vice Principal, Robert M. Barto, sent one of the boys to class and brought the second boy, Joseph A. Baccino, Jr., the defendant, to his assigned class. At that time the defendant was carrying a coat. The Vice Principal took the coat from the defendant to make sure that the defendant would go to class. Prior to the Vice Principal obtaining possession of the coat there was a tug-of-war over it, and, of course, the Vice Principal won. Because the defendant was out of class illegally and because the defendant was known to the Vice Principal to have experimented with drugs in the past, the Vice Principal made a search of the coat, finding ten packets of hashish. The State Police were called and the defendant was arrested for possession of a dangerous drug with intent to sell.

Defendant files this motion and claims that the Vice Principal, as an employee of the State Educational System, that he is bound to have probable cause before he makes a search and that the search made by the Vice Principal was without probable cause and, therefore, inadmissible.

The legal issue to be resolved is a narrow one. Is the principal of a high school a private individual to whom the prohibitions of the Fourth Amendment of the United States Constitution do not apply, Burdeau v. McDowell (1921) 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048, 13 A.L.R. 1159 or government official or agent to whom the Fourth Amendment and the exclusionary rule applies. Mapp v. Ohio (1961) 367

U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933.

The rationale for the rule which allows unlawfully seized evidence by private individuals to be admitted, aside from the fact that it is not unconstitutional, is the notion that private individuals would not be deterred by an exclusionary rule. Ann. 36 A.L.R.2d 553, 559. While this may be true in the case of isolated private searches, it is inapposite to the situation of a school principal who has a duty to investigate unlawful activity.

The Supreme Court stated in West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628: "The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself * * *—Boards of Education not excepted." A principal of a public school is subject to the supervision and control of the Board of Education and the school board or governing body of the school in all activities connected with the business of the school. 78 C.J.S. School and School Districts § 237(a). A principal is a state employee, 14 Del.Ch. 741. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731, supports the proposition that a high school principal is a state official for purposes of jurisdiction over a, 42 U.S.C. § 1983, action pursuant to 28 U.S.C. § 1343. Also see Burnside v. Byars (5th Cir. 1966) 363 F.2d 744; Ferrell v. Dallas Independent School District (5th Cir. 1968) 392 F.2d 697.

■ Since 42 U.S.C. § 1983 requires the principals' actions to be "state action" in order for a Federal Court to recognize a cause of action, it is difficult to see how a principal could also be a private official for purposes of the Fourth Amendment at the same time. Therefore, I conclude that a principal is not a private individual for purposes of the Fourth Amendment but that his actions are those of a state official and are subject to the Fourth Amendment. This does not mean, however, that the entire law of search and seizure as it applies in the criminal law is automatically incorporated into the school system of this state. The Fourth Amendment is the line which protects the privacy of individuals including students but only after taking into account the interests of society.

■ In Delaware a principal stands in loco parentis to pupils under his charge for disciplinary action, at least for purposes which are consistent with the need to maintain an effective educational atmosphere. 14 Del.C. § 701 (1970).

Thus, the question becomes what is the relationship of the doctrine of loco parentis to the Fourth Amendment. There is a split of authority in the cases which have considered the issue. In Mercer v. State, Tex.Civ.App., 450 S.W.2d 715 (1970) the Court held that since the principal was acting in loco parentis, he was not an arm of the government. In Re Donaldson, 269 Cal.App.2d 509, 75 Cal.Rptr. 220 (1969). However, in People v. Jackson, 65 Misc.2d 909, 319 N.Y.S.2d 731 (1971) the New York Supreme Court, Appellate Division, after classifying the Coordinator of Discipline as a government official, held that the doctrine of loco parentis was merely a compelling state interest to be balanced against the prohibitions of the Fourth Amendment. The result was the adoption of a standard of reasonable suspicion rather probable cause to justify a search in view of the "distinct relationship" between the high school official and the student.

New York has recognized that a student has a right to freedom from unreasonable searches and seizures. People v. Overton, 20 N.Y.2d 360, 283 N.Y.S.2d 22, 229 N.E. 2d 596. Texas apparently does not. See Justice Hughes' dissent in Mercer v. State, supra, wherein he stated he believes the majority expanded the doctrine of loco parenti to unconstitutional proportions. 450 S.W.2d 715 at 718.

■ I believe the decisions of the United States Supreme Court, however, have made it clear that the Bill of Rights applies to juveniles. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

In Tinker v. Des Moines Independent Community School District, supra, the Supreme Court said that school officials do not possess absolute authority over their students and that students in state-operated schools are "persons" under the Federal Constitution, and are possessed of fundamental rights which the State must respect. Thus, in striking the balance we cannot ignore the students' constitutional rights. But various factual situations give rise to different standards and procedures in light of the Fourth Amendment. Compare Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) [stop and frisk on reasonable suspicion] and Henderson v. United States, 390 F.2d 805 (9th Cir. 1967) [border search—even mere suspicion not required to search bags and vehicle].

It is this court's duty to make sure schools do not become enclaves to totalitarianism, Tinker, supra, after taking into account the necessity to maintain discipline and an effective educational atmosphere.

■ Thus, I conclude that the doctrine of loco parentis 14 Del.C. § 701 must be balanced against the students' Fourth Amendment rights to determine whether or not those rights have been violated. The only question remaining is the standard to be used to strike the balance. I conclude, as did the majority in People v. Jackson, supra, that "[t]he in loco parentis doctrine is so compelling in light of public necessity and as social concept antedating the Fourth Amendment, that * * * a search, taken thereunder upon reasonable suspicion should be accepted as necessary and reasonable." 319 N.Y.S.2d 731, 736. This standard should adequately protect the student from arbitrary searches and seizures and give the school officials enough leeway to fulfill their duties.

Turning to the facts, the question is whether or not the principal had reasonable suspicion to believe that the defendant's jacket contained illegal drugs when he seized it. Or in the alternative, the question may be asked whether the principal was enforcing a reasonable school regulation when he seized the jacket and thereafter did he have reasonable suspicion that the jacket contained illegal drugs so that it became his duty to search it.

■ It is the Court's opinion that the Vice Principal had reasonable suspicion to believe that the defendant's jacket contained contraband. Defendant's motion to suppress the evidence is denied.

It is so ordered.