121 N.J. Super. 108 (1972)
296 A.2d 102
STATE IN THE INTEREST OF G.C.
Superior Court of New Jersey, Juvenile and Domestic Relations Court,  Union County.
Decided October 6, 1972.
*109 Mr. Victor J. Freda for respondent (Messrs. Sheldon & Freda, attorneys).
*110 Mr. Charles Daly, Assistant Prosecutor, for the State of New Jersey. (Mr. Michael H. Kessler, Assistant Prosecutor, on the brief; Mr. Karl Asch, Union County Prosecutor, attorney).
KENTZ, P.J.J. & D.R.
A complaint was filed in this court pursuant to R. 5:8-1 alleging that a 16-year-old juvenile possessed and sold amphetamine tablets in violation of N.J.S.A. 2A:4-14. The juvenile, sometimes otherwise herein referred to as G.C., was accused of having illegally approximately 90 pills in a plastic container which she offered for sale to eighth grade students at a price of three pills for one dollar.
On the motion of the prosecutor and with the consent of the complainant, the complaint was amended to eliminate the charge of sale of a dangerous drug so that only the allegation of possession remained.
The complaint was listed on the formal calendar as provided by R. 5:9-1(c) and the juvenile was represented by retained counsel. The county prosecutor was requested to appear and prosecute the complaint in accordance with R. 5:3-3(c).
The juvenile denied the complaint as amended and moved to suppress certain evidence on the ground that it was the product of an unlawful search and seizure in violation of the Fourth Amendment to the Constitution of the United States. R. 5:8-9 permits an aggrieved juvenile to make a motion to suppress evidence in the Juvenile and Domestic Relations Court. See State in the Interest of L.B., 99 N.J. Super. 589 (J. & D.R. Ct. 1968), and State v Lowry, 95 N.J. Super. 307 (Law Div. 1967).
The pertinent facts are as follows: On February 7, 1972 the principal of the public high school that G.C. attended received a telephone call from an unidentified person. The caller reported that G.C. had been selling pills that morning in the girls room. The following morning, a student approached one of the teachers at the school and informed her *111 that the juvenile had a partially filled plastic container of white pills and was trying to sell them to other students. The teacher reported this to the principal who then had G.C. brought into his office. Upon her arrival she was informed of the charges made against her, and the principal stated that it was his duty to investigate the reports in order to protect the student body and her reputation. G.C. denied the allegations and agreed to cooperate in a search of her person.
A female teacher was then summoned to the office in order to carry out the search. The juvenile emptied her pockets and, upon the principal's request, she permitted the female teacher to feel her pockets to make certain that they were empty. G.C. was next asked to empty her purse. She agreed and dumped the contents of the purse onto the principal's desk. He asked if she would consent to his looking into the purse. Without further comment, she unzipped a compartment in her purse and tossed a partially filled container of white pills onto the desk. The juvenile was then asked if she would reveal the names of any students that she had sold pills to, or at least the names of those students who might take an overdose. G.C. responded with the name of one student.
The principal then sent for a police officer to ascertain the nature of the pills discovered. An officer arrived and after conducting a field examination stated that the pills appeared to be amphetamines. A subsequent laboratory analysis confirmed this.
The juvenile's parents were summoned to the school. When they arrived the principal informed them of G.C.'s conduct and that she would be suspended for ten school days.
The admissibility of evidence secured by a school administrator from a student seems to be a question of first impression in our State. At issue are the conflicting interests of a student's right to privacy and a school official's "affirmative obligation of the school authorities to investigate any *112 charge that a student is using or possessing narcotics * * *." People v. Overton, 20 N.Y.2d 360, 362-363, 283 N.Y.S.2d, 22, 24-25, 229 N.E.2d 596, 597-598 (Ct. App. 1967); Moore v. Student Affairs Committee 284 F. Supp. 725, 729-730. (M.D. Ala. 1968).
The starting point for analyzing a juvenile's assertion of constitutional rights is found in the case of In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), wherein it was held that "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." Children are also entitled to the constitutional rights and safeguards of due process of law. Building upon the Gault foundation, the United States Supreme Court emphasized, in Tinker v. Des Moines Independent School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), that a juvenile does not leave his constitutional protection at the school house door. The Tinker case involved a nondisruptive wearing of black armbands in silent protest against the Vietnam war. Thus at stake were the "preferred" First Amendment liberties of freedom of expression and speech, rights that traditionally have enjoyed superior status in court interpretations of the United States Constitution. Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949). It would seem extremely unlikely that student rights under the United States Constitution extend to the point that actual disruption would be permitted in the classroom.
The precise applicability of the Fourth Amendment to disciplinary proceedings in an institutional environment is unresolved. It certainly goes without saying that the suppression rule, as enunciated in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), is not present in the principal-student confrontation. Chief Justice Weintraub suggests, in State v. Bisaccia, 58 N.J. 586, 591 (1971), that "It is puzzling that the suppression rule was not anchored to the reason for its creation. The evil sought to be ended was insolence in office."
*113 It is well established that the Fourth Amendment protects the people against an unreasonable search and seizure. State v. Campbell, 53 N.J. 230 (1969); State v. Fioravanti, 46 N.J. 109, 122 (1965). Whether a high school administrator is acting "insolently" in investigating allegations that one of the students is selling dangerous drugs is a fact question that goes to the overall reasonableness of the search. It is well to remember that when incriminating evidence is found on a suspect and that evidence is then suppressed, "the pain of suppression is felt, not by the inanimate State or by some penitent policeman, but by the offender's next victims * * *." See Bisaccia, supra, at 590.
I have indicated that juveniles are entitled to due process of law under Gault, supra, and that their constitutional rights accompany them into the classroom, Tinker, supra. The question remains whether or not the student has all the protections of the Fourth Amendment when under interrogation by his public high school principal or some other school official. The Fourth Amendment only restrains the actions of a so-called "governmental official." State v. Frank, 112 N.J. Super. 592 (App. Div. 1971); Del Presto v. Del Presto, 97 N.J. Super. 446 (App. Div. 1967). It has no applicability if the school official is acting as a private citizen. Cf. State v. Kelly, 61 N.J. 283 (1972).
In Frank, supra, the court said:
* * * The security provided by the Fourth Amendment against unreasonable searches and seizures extends only to governmental action. Evidence of criminal activity discovered by a civilian, not acting as a government agent or in concert with government agents, may be reported or surrendered to the police without violating Fourth Amendment rights * * * [112 N.J. Super. at 594]
The status of a school administrator as either a government official or private citizen has been debated recently in the courts. Some jurisdictions have held that a public school officer is not a government official subject to the restraints *114 of the Fourth Amendment. See People v. Stewart, 63 Misc.2d 601, 313 N.Y.S.2d 253 (Crim. Ct. N.Y.C. 1970); Moore v. Student Affairs Committee of Troy State University, 284 F. Supp. 725 (M.D. Ala. 1968); cf. Piazzola v. Watkins, 316 F. Supp. 624 (M.D. Ala. 1970).
Several other jurisdictions have accepted the opposite proposition that a public school administrator is a government official. State v. Baccino, 282 A.2d 869 (Del. Super. 1971); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Tinker v. Des Moines, supra; Burnside v. Byars, 363 F.2d 744 (5 Cir.1966); Ferrell v. Dallas Independent School District, 392 F.2d 697 (5 Cir.1968); People v. Jackson, 65 Misc.2d 909, 319 N.Y.S.2d 731 (App. Div. 1971).
New Jersey has adopted the latter position and considered public school authorities to be government officers. Durgin v. Brown, 37 N.J. 189 (1962); Kaveny v. Board of Commissioners, Montclair, 69 N.J. Super. 94 (Law Div. 1961), aff'd 71 N.J. Super. 244 (App. Div. 1962).
Generally the actions of a government official who is performing his assigned duties should be subject to the restraints of the Bill of Rights and especially to the inhibitions of the Fourth Amendment. The right of privacy that the Mapp rule enforces must be preserved against the unmitigated zeal and "insolence" of government officers at all levels. See State v. Bisaccia, supra.
The question that remains involves the circumstances, if any, that will permit public school administrators to nevertheless encroach on student rights. Phrased differently, the issue may be stated thusly: Is the danger of illegal drug possession and sale by a student sufficient to justify an administrative search upon grounds of reasonable suspicion in order to safeguard student health and maintain an orderly academic environment?
If one freely and knowingly consents to a search he cannot later challenge the fruits of that search as having been obtained unlawfully. State v. King, 44 N.J. 346 *115 (1965); Schaffer v. State, 5 Storey 115, 184 A.2d 689 (Del. Super. 1962), cert. den. 374 U.S. 834; People v. Fahrner, 213 Cal. App.2d 535, 28 Cal. Rptr. 926 (D Ct. App. 1963). The facts strongly suggest that such a consent was given by the juvenile in this case. However, in the absence of sufficient evidence before me on this issue, I make no finding at this time as to whether a valid consent was given by the juvenile. Accordingly, my ultimate decision herein is not based on the so-called consent theory, but rather is grounded on other principles of law.
A review of the facts in the instant case leads me to the conclusion that the investigation by the school authorities was carried out with the utmost fairness and consideration, without force or other improper influence, mental or physical, and in accordance with the highest standards of due process. State in the interest of R.W., 115 N.J. Super. 286 (App. Div. 1971), aff'd 61 N.J. 118 (1972)
The privacy rights of public school students must give way to the overriding governmental interest in investigating reasonable suspicions of illegal drug use by such students even though there is an admitted incursion onto constitutionally protected rights  rights that are no less precious because they are possessed by juveniles. I find that the gravity of the evil is sufficiently great, both to the suspected individual and to those who might be victimized by drugs that the suspect makes available. In People v. Overton, supra, the court said:
The school authorities have an obligation to maintain discipline over the students. It is recognized that, when large numbers of teenagers are gathered together * * * their inexperience and lack of mature judgment can often create hazards to each other. Parents, who surrender their children to this type of environment, in order that they may continue developing both intellectually and socially, have a right to expect certain safeguards.
It is in the high school years particularly that parents are justifiably concerned that their children not become accustomed to antisocial behavior, such as the use of illegal drugs. The susceptibility to suggestion of students of high school age increases the danger. [283 N.Y.S.2d at 24, 229 N.E.2d at 597]
*116 This emphasis on the responsibility of school officials to maintain school discipline in order to protect immature students from their irresponsible peers is no more than a restatement of the time-honored in loco parentis concept. Such procedure is fundamental to the maintenance of an educational atmosphere and indeed antedates the Fourth Amendment by a good many years. Blackstone described it as follows:
He [the parent] may also delegate part of his parental authority during his life to the tutor or schoolmaster of his child; who is then in loco parentis and has such a portion of the power of the parent committed to his charge. viz, that of restraint and correction, as may be necessary to answer the purposes for which he is employed. [1 Blackstone, Commentaries 453]
A more recent conceptualization was set forth in People v. Jackson, supra, where the court paraphrased the Overton decision in the following manner:
While a student has the right to be free of unreasonable search and seizure, school authorities, in view of the "distinct relationship" between them and their students and the right of parents to expect that certain safeguards will be taken, have "the affirmative obligation ... to investigate any charge that a student is using or possessing narcotics", which "becomes a duty when suspicion arises." [319 N.Y.S.2d at 733]
Many other jurisidictions have adopted the in loco parentis theory in permitting school authorities acting on reasonable suspicion to search students and to seize dangerous instrumentalities and narcotic drugs. People v. Jackson, supra; Mercer v. State, 450 S.W.2d 715 (Tex. Civ. App. 1970); In Re Donaldson, 269 Cal. App.2d 509, 75 Cal. Rptr. 220 (D. Ct. App. 1969); People v. Stewart, 63 Misc.2d 601, 313 N.Y.S.2d 253 (Crim. Ct. N.Y.C. 1970); State v Baccino, 282 A 2d 869 (Del. Super. 1971); State v. Stein, 203 Kan. 638, 456 P.2d 1 (Sup. Ct. 1968); In Re G., 11 Cal. App.3d 1193, 90 Cal. Rptr. 361 (D. Ct. App. 1969).
Our Supreme Court said in Bisaccia, supra:
*117 * * * On a motion to suppress we deal with evidence of guilt, and the purpose of the litigant is to conceal that evidence to the end that he will escape conviction notwithstanding his guilt. * * * To justify so serious an insult to the judicial process, some compensating gain should be incontestable. [58 N.J. at 589]
I find no such compensating gain in this case The school authorities are duty-bound to investigate reasonable suspicion of student criminality. There is no evidence here that the principal acted on a whim or capriciously in interrogating G.C., but rather that he acted responsibly and diligently under the circumstances. Indeed, a school administrator or teacher would be derelict in his duty if such an investigation were not carried out.
I hold that in light of the reasonable suspicion that G.C. was illegally in possession of and selling dangerous drugs and in view of the overall fairness of the investigation and search that the public school principal, acting as a governmental officer and under the in loco parentis authority, made a reasonable search and seizure which was not violative of the Fourth Amendment.
Motion denied.