**UNITED STATES of America**

v.

**Alfred LEWIS, Defendant.**

**No. 74 Cr. 1156–CLB.**

United States District Court,
S. D. New York.

Oct. 1, 1975.

Paul J. Curran, U. S. Atty., by T. Barry Kingham, Asst. U. S. Atty., New York City, for plaintiff.

Jack T. Litman, New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

By notice of motion dated September 23, 1975, but received September 25, 1975, four days prior to the date scheduled for the commencement of trial, the defendant, by his counsel, moved for an order pursuant to Rule 41(e), F.R.Crim. P., suppressing the use at his trial of certain evidence which only recently came to the attention of federal authorities. The Assistant United States Attorney has conceded the facts contained in defense counsel's affidavit, appended to the notice of motion, but has not conceded the argumentative and conclusory aspects of the affidavit.

The defendant, at the time of his arrest, on November 29, 1974, was an inmate of the Bayview Correctional Facility (hereinafter "Bayview" or "the halfway house"), a halfway house which is part of the state correctional system. The defendant had been transferred to this facility after an extended period of incarceration as a result of his conviction on armed robbery charges. The purpose of a halfway house is to introduce a prisoner to outside life gradually, during daytime hours, so as to foster the readjustment of prospective parolees.

During his confinement at Bayview, Lewis was assigned a room which had no door, and was issued a locker which was kept closed by a key which he had in his

possession. It was Bayview's policy for correction officers to search these rooms to insure the safety and security of the facility, as might be expected in a quasi-penal institution, but to limit these searches to instances in which there was an articulable basis for this intrusion.

On November 29, 1974, Bayview officials were notified of defendant's federal arrest on the instant charge. This alerted them to the fact that Lewis' return was not imminent, and that he was unlikely to continue to be considered a good risk for participation in a halfway house program. Bayview officials removed certain articles *en masse* from Lewis' room and locker and placed them in storage. Their purpose was to prepare the room for the next prisoner to whom it would be assigned.

■ On September 15, 1975, a student assistant in the Office of the United States Attorney went to Bayview with a subpoena seeking the production of all files and records pertaining to Lewis' two months residence at that facility. In our consideration of this motion we treat the subpoena as a nullity. A subpoena cannot substitute for a search warrant and we regard the present possession of Lewis' things as standing on no different ground than possession by the Bayview officials who had collected them after Lewis' arrest.

■ It is abundantly clear that lawful incarceration necessarily entails the limitation of certain rights and privileges, and that a prison inmate does not enjoy the unfettered exercise of all constitutional rights. Prison authorities may limit the exercise of certain fundamental rights to the extent that this is made necessary by legitimate and reasonable "needs and exigencies of the institutional environment." *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). See also, *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Among the constitutional rights which are subject to limitation to meet the needs of the prison environment are the rights embodied in the Fourth Amendment. *Sostre v. Preiser*, 519 F.2d 763, 764 (2d Cir. 1975); *Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972). As the Supreme Court noted in *Lanza v. New York*, 370 U.S. 139, 142, 82 S.Ct. 1218, 1220, 8 L.Ed.2d 384 (1962):

" . . . to say that a public jail is the equivalent of a man's 'house' or that it is a place where he can claim constitutional immunity from search or seizure of his person, his papers, or his effects, is at best a novel argument. . . . Yet, without attempting either to define or to predict the ultimate scope of Fourth Amendment protection, it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day."

■ Yet, it is apparent that Bayview was not an ordinary prison facility. It was a halfway house, partaking of the attributes both of a correctional facility, and a structured or sheltered residence. Its function in the correctional system is to provide a supervised and restricted environment in which to ascertain the convict's ability to form a productive life in society. The halfway house still fulfills the functions of a penal institution in its concern for security and rehabilitation. The privileges enjoyed by a resident of a halfway house are neither the same as those of an ordinary citizen, nor as restricted as those of an inmate in a more secure correctional facility.

■ ■ *State v. Williams*, 486 S.W.2d 468 (Mo.Sup.Ct.1972), upheld the warrantless search of the room of a halfway house by a parole officer who, although he had reason to be suspicious, did not have probable cause to search for narcotics. The Fourth Amendment affords protection only against searches that are unreasonable and what is unreasonable for a resident of a halfway house differs from what is unreasonable for an ordinary citizen. See *United States ex rel. Santos v. New York State Board of*

*Parole*, 441 F.2d 1216 (2d Cir. 1971), *cert. denied*, 404 U.S. 1025, 92 S.Ct. 692, 30 L.Ed.2d 676 (1972); *United States ex rel. Randazzo v. Follette*, 418 F.2d 1319 (2d Cir. 1969), *cert. denied* 402 U.S. 984, 91 S.Ct. 1672, 29 L.Ed.2d 150 (1971); *People v. Randazzo*, 15 N.Y. 2d 526, 254 N.Y.S.2d 99, 202 N.E.2d 549 (1964). See also, *United States v. Grisby*, 335 F.2d 652 (4th Cir. 1964).

Lewis' right to privacy is only slightly greater in regard to those articles which he kept in his locker than those kept in the doorless room. Still, the exigencies of life in a quasi-penal institution require that a locker be inspected for contraband on appropriate occasions and that it be cleaned out when a resident absents himself by reason of his arrest by another jurisdiction. This intrusion upon Lewis' right to privacy was reasonable under the circumstances and was fully supported by the necessities of a reasonable regimen of the orderly operation of a correctional facility. See generally, *Shaffer v. Field*, 339 F.Supp. 997 (C.D.Cal.1972), *aff'd*, 484 F.2d 1196 (9th Cir. 1973); *United States v. Donato*, 269 F.Supp. 921 (E.D.Pa.), *aff'd on opinion below*, 379 F.2d 288 (3d Cir. 1967); *People v. Overton*, 20 N.Y.2d 360, 283 N.Y.S.2d 22, 229 N.E.2d 596 (1967).

■ Even if we were to assume that Lewis enjoyed the rights of the ordinary citizen to the enjoyment of the privacy of his residence, the search was still lawful. When Bayview authorities were advised of Lewis' arrest and that he would not be returning to Bayview, they were justified in removing his belongings, much as the manager of a hotel might empty a room for its next guest. *United States v. Parizo*, 514 F.2d 52 (2d Cir. 1975), citing *United States v. Croft*, 429 F.2d 884 (10th Cir. 1970); *United States v. Cowan*, 396 F.2d 83 (2d Cir. 1968). Lewis contends that he did not abandon his residence at Bayview, and that he was prevented from returning there only by reason of his federal arrest. "We are not persuaded by this argument for it was defendant's own conduct that prevented his return." *United States v. Croft, supra*, 429 F.2d at 887. The fact that Bayview authorities subsequently returned to Lewis an item which was neither contraband nor of evidentiary value is not inconsistent with a finding that he had relinquished his interest in the privacy of his room and locker by his failure to return. It is argued that these articles remained in Lewis' constructive possession. The circumstances here do not present a situation in which "constructive possession is so clear or the relinquishment of possession is so temporary and insignificant as to leave" Lewis' privacy interest, limited as it was, intact. *Couch v. United States*, 409 U.S. 322, 333, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).

The Bayview authorities, having lawfully seized Lewis' belongings, were not under an obligation to prevent their inspection by federal authorities, indeed they were obligated to cooperate with law enforcement officials. *United States v. Cowan, supra*. There was nothing unlawful in the exhibition of these articles to a representative of the United States Attorney. Indeed, if there is any cause for concern here, it is found in the failure of the Bayview authorities to have discovered previously this evidence in their possession which was relevant to a federal prosecution the pendency of which they were well aware.

The exhibition of these articles to the federal investigator was lawful and it was proper to produce them for trial with or without a lawful subpoena.

The motion to suppress as evidence those articles as were obtained from the Bayview authorities is denied.

So ordered.