**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles Edward LEE and Donald Lee Wells, Defendants-Appellants.**

**Nos. 81–2084, 81–2086, 81–2380 and 81–2381.**

United States Court of Appeals, Tenth Circuit.

Jan. 27, 1983.

Rehearing Denied March 22, 1983.

Certiorari Denied June 13, 1983. See 103 S.Ct. 3094.

Richard G. MacDougall, Salt Lake City, Utah, for defendant-appellant Wells.

Edward K. Brass, Salt Lake City, Utah, filed a brief, for defendant-appellant Lee.

Stewart C. Walz, Asst. U.S. Atty., Salt Lake City, Utah (Brent D. Ward, U.S. Atty., Salt Lake City, Utah, with him on brief), for plaintiff-appellee.

Before McWILLIAMS, LOGAN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Charles Edward Lee and Donald Lee Wells were convicted by a jury of armed bank robbery under 18 U.S.C. §§ 2, 2113(a), (d) (1976). On appeal they challenge the admission of certain evidence from an allegedly unconstitutional search, the use of a photo array, and the district court's failure to order a new trial on the basis of newly discovered evidence. We affirm.

Defendants were accused of robbing the South Ogden Branch of the Bank of Utah. The robbery took place the morning of December 5, 1980, when two men demanded money from tellers Laura Tracy Rackham and Judy Ann Burt. The robber at Rackham's cage pulled a gun from his overcoat pocket and rested it on the counter, aiming it at her. The robbers took $2,126, including $500 in "bait money" ($20–bills whose serial numbers had been recorded) and several hundred dollars in one-dollar bills.

Meanwhile, officers of the U.S. Marshal's office in Denver, Colorado, had been seek-

ing Wells and Lee as fugitives from a federal correctional institution. By December 3, 1980, the officers had succeeded in tracing them to a rented room in the Wagon Wheel Motel in Boulder. Because Wells and Lee were temporarily away from the motel, the officers had rented a nearby room to watch for their return. The fugitives returned to their room about 11:15 p.m. Friday, December 5 (the day of the bank robbery in Ogden). The officers waited until they believed Wells and Lee would be in bed, went to Wells' and Lee's door, announced their presence several times and, after receiving no response, broke down the door, arrested the men, and took them to the officers' room. One officer returned to defendants' room to get their clothes for them and looked around for anyone who might be hiding there. When he looked under the bed, he saw a bag and what appeared to be loose bills. The room was closed and watched until the next day, when FBI agents who were investigating Wells and Lee in connection with armed bank robberies were notified that the two men had been arrested. After Wells' and Lee's rental period expired at 11:00 that morning, the FBI agents searched their room with the motel owner's permission. Underneath the bed the agents discovered scattered bills and a transparent plastic bag containing more cash, a total of $765 including 436 one-dollar bills. They also found money inside a small zipped duffle bag and a gun in a sock inside a partially closed suitcase.[1]

Late in January an FBI agent showed the tellers photographs of Wells, Lee, and several other men. Rackham identified Wells as the man who had robbed her but did not identify Lee. Burt identified neither. At trial, Rackham identified both Wells and Lee. The other witnesses from the bank were unable to identify either man. However, Wells and Lee were identified by Timothy Napier, the driver of the getaway car who testified in considerable detail about the robbery. Like Wells and Lee, Napier had rented a room at the Wagon Wheel Motel and had been arrested when he returned late the night of the robbery. Some of the bank's bait money was in his possession at the time of his arrest. He testified as a Government witness as part of a plea bargain.

I.

## SEARCH OF THE MOTEL ROOM

■ Defendants argue that the court below erred by permitting the money found under the bed to be admitted into evidence. Our disposition of this issue is governed by *United States v. Croft,* 429 F.2d 884 (10th Cir.1970), which is directly on point. When Croft was arrested for traffic violations, the arresting officer found several suspicious looking checks and a motel room key in his glove compartment. Later that day, after the rental period on Croft's room had elapsed, the local county attorney and county sheriff went to the motel. They searched Croft's room with the motel owner's permission, finding a cardboard box containing a check protector. The motel owner kept the check protector in his office until an FBI agent picked it up several days later. We held that Croft lacked standing to challenge the search and seizure because "[w]hen the rental period has elapsed, the guest has completely lost his right to use the room and any privacy associated with it." *Id.* at 887. We specifically rejected Croft's argument "that the expiration of the rental period should not control ... because his arrest prior to check-out time prevented him from returning to the motel and perhaps extending the rental period," because "it was defendant's own conduct that prevented his return to the motel." *Id.*

Lee asserts that "*Croft* has been abused in this case," Brief of Appellant Lee at 5, but makes no attempt to distinguish it and cites no authority to indicate some reason to disregard it. Indeed, since it was decided, *Croft* has been followed by several other courts. *United States v. Jackson,* 585 F.2d 653, 658 (4th Cir.1978); *United States v. Akin,* 562 F.2d 459, 464 (7th Cir.1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978); *United States v. Haddad,* 558 F.2d 968, 975 (9th Cir.1977); *United States v. Parizo,* 514 F.2d 52, 54 (2d Cir.1975); *United States v. Lewis,* 400 F.Supp. 1046, 1049 (S.D.N.Y.1975).

It is true, as defendants point out, that nearly twelve hours elapsed between their arrest and the search, and that the officers had opportunity to apply for a warrant. That does not serve to distinguish *Croft,*

---

**1.** The trial court suppressed the evidence found inside the duffle bag and the suitcase. Because

of our disposition of the case, we need not address this issue.

however, for there also a warrant could have been sought.

Wells' reliance on *United States v. Block,* 590 F.2d 535 (4th Cir.1978), is ill-founded. In that case the Fourth Circuit upheld the search of Block's room because his mother, who owned the house and ordinarily had access to the room, consented. However, the court did require suppression of evidence the police found inside a locked footlocker in the room. The court held that Block's mother had no authority to consent to the search of the footlocker since it was clearly the son's private property, it was kept locked in his absence, and she had no key. "While authority to consent to search of a general area must obviously extend to most objects in plain view within the area, it cannot be thought automatically to extend to the interiors of every discrete enclosed space capable of search within the area." *Id.* at 541.

The district court here followed *Block,* suppressing the evidence found inside the duffle bag and suitcase. Wells now asks that we suppress the money found under the bed because "the area under the bed was just such a 'discrete enclosed space.'" Brief of Appellant Wells at 13. The answer to that argument can be found in a footnote to the passage quoted:

> "Obviously not every 'enclosed space' within a room or other area—*e.g.,* pockets in clothes, unsecured shoeboxes, and the like—can claim independent status as objects capable of search not within reach of the authorized area search. The rule has to be one of reason that assesses the critical circumstances indicating the presence or absence of a discrete expectation of privacy with respect to the particular object: whether it is secured, whether it is commonly used for preserving privacy, etc."

*Block,* 590 F.2d at 541 n. 8. The area under a bed in a motel room is patently unlike a locked footlocker in one's home. Daily motel housekeeping (making the bed, vacuuming, tidying up) might reveal items hidden under the bed, and privacy from such disturbances after the rental period has expired cannot be expected. The search of the motel room was valid and the money properly admitted.

## II.

### USE OF PHOTO ARRAY

Wells challenges the Government's use of a photo array, asserting that it was impermissibly suggestive and hence tainted Rackham's in-court identification of him. An FBI agent showed the photo array to the two tellers several weeks after the robbery. The photo spread contained seven black-and-white photographs. Four men were shown in front and single profile poses ("mug shots"), and a fifth was shown in front and double profile poses. Wells and Lee were each shown in a single front-view pose standing in front of a measuring scale for height.

In *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court held that each case of initial identification by photograph

> "must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

*Id.* at 384, 88 S.Ct. at 971. Photo arrays containing mug shots of other persons along with a single, front-view photograph of the defendant have been held not to be impermissibly suggestive. *United States v. Harrison,* 460 F.2d 270 (2d Cir.), *cert. denied,* 409 U.S. 862, 93 S.Ct. 152, 34 L.Ed.2d 110 (1972); *United States v. Magnotti,* 454 F.2d 1140 (2d Cir.1972).

At trial, the FBI agent who had shown Rackham the photographs testified: "The first time she looked through the photographs, she stated, immediately, that the photograph of Wells jumped out at her." Rec., vol. II, at 73. Rackham testified that the photograph had jumped out at her "[b]ecause the incident, itself, had been kind of scary, and it is not every day that somebody points a gun at you." Rec., vol. III, at 38. Rackham was certain that the style of Wells' photograph had not drawn her attention to it. We note that the photograph of Lee was different from the others in exactly the same ways that Wells' was, and yet Rackham did not identify Lee's photograph. In addition, the other teller who was shown the same photographs did not identify the robbers from the allegedly suggestive photographs. Rackham also testified that her in-court identification was based on recollection independent of the photo spread. Under these circumstances, we are satisfied that the photo array was not impermissibly suggestive.

*See also United States v. Patterson,* 447 F.2d 424 (10th Cir.1971), *cert. denied,* 404 U.S. 1064, 92 S.Ct. 748, 30 L.Ed.2d 752 (1972); *Davida v. United States,* 422 F.2d 528 (10th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (1970).

## III.

### NEW TRIAL

Wells and Lee moved for a new trial based on newly discovered evidence that Rackham had been a part-time undercover agent for the Ogden City Police Department at the time of trial. They contended the evidence indicated a bias in favor of the prosecution that, if revealed, would have seriously damaged Rackham's credibility and hence the Government's whole case. The district court denied the motions, and Wells and Lee now appeal.

We stated in *United States v. Allen,* 554 F.2d 398, 403 (10th Cir.) (citations omitted), *cert. denied,* 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977):

> "The general requirements for a new trial in a criminal case are familiar. The newly discovered evidence must be more than impeaching or cumulative; it must be material to the issues involved; it must be such as would probably produce an acquittal; and a new trial is not warranted by evidence which, with reasonable diligence, could have been discovered and produced at trial. The motion is not regarded with favor and is granted only with great caution, being addressed to the sound discretion of the trial court."

Applying this test, the district court found that the evidence would serve only to demonstrate bias on the part of a witness and thus would not be "more than impeaching or cumulative." Rec., vol. I, at 139. Second, the court found the evidence not to be "material to the issues involved," *id.,* because it only went to credibility. Third, the court summarized the evidence identifying Wells and Lee as the robbers and concluded that even if the newly discovered evidence would cast doubt on the reliability of Rackham's identification of them, it would not "probably produce an acquittal." *Id.* These findings are well-supported in the record and accurately apply the law.

We affirm the convictions.